UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

EUGENE A. FISCHER,

                    Plaintiff,

v.                                          Case No.  5:06-cv-407-Oc-10GRJ

FEDERAL BUREAU OF
PRISONS, et al.,

                    Defendants.

_____

## ORDER

Plaintiff commenced this case by filing a prisoner civil rights complaint (Doc. 1)

pursuant to the Federal Tort Claims Act (FTCA),[1] and Bivens v. Six Unknown Named

Agents of the Federal Bureau of Narcotics.[2]  The Parties have consented to the

exercise of jurisdiction by a United States Magistrate Judge, and the case has been

referred to the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and Fed.

R. Civ. P. 73.  See Doc. 21.  Pending before the Court is Defendants' Motion to

Dismiss, or Alternatively for Summary Judgment (Doc. 7).   For the following reasons,

the Court concludes that the Motion to Dismiss should be granted with respect to

Plaintiff's FTCA claims and his official-capacity claims against the Bureau of Prisons

and Warden Tracy Johns, and that Plaintiff should be directed to file an Amended

Complaint containing only his Bivens claims against Dr. Mark Tidwell.

_____

[1] 28 U.S.C. § 2671, et seq.

[2] 403 U.S. 388 (1971) (authorizing civil rights suits against individual federal officials).
Although Plaintiff alleges that his constitutional claims are made pursuant to 42 U.S.C. § 1983e,
because Plaintiff is a federal prisoner asserting constitutional claims against federal officials the
Complaint is properly construed pursuant to Bivens.

## I. Plaintiff's Factual Allegations

According to the Complaint, Plaintiff is serving a life sentence in the custody of the Bureau of Prisons and presently is incarcerated at FCC Coleman.  In 1998, Plaintiff was diagnosed with benign prostate hyperplasia (BPH).  Plaintiff was treated with medication by the medical staff at Coleman, but such treatment proved ineffective. Prostate biopsies in 1998, 2002, and 2004 revealed benign prostate enlargement.  By 2002, Plaintiff was suffering severe obstructive symptoms due to BPH.

In June 2004, Plaintiff's symptoms were worsening to include severe obstruction of the urinary tract.  Defendant Dr. Mark Tidwell, the medical officer for FCC Coleman-USP where Plaintiff was then incarcerated, referred Plaintiff to the Urology Center of Florida.  Plaintiff alleges that the Center's physician recommended immediate prostate reduction.  Plaintiff was catheterized and returned to Coleman, with a warning that failure to reduce the prostate could lead to kidney failure.  At Coleman, Dr. Tidwell directed removal of the catheter.  Plaintiff subsequently submitted cop-outs requesting prostate surgery.  In October 2004, Plaintiff was sent back to the Urology Center for a prostate biopsy.  Plaintiff had been taken off of coumadin, a blood-thinner, prior to the biopsy.  Upon Plaintiff's return to Coleman, he  was put back on coumadin.  Plaintiff alleges that no blood testing was performed in connection with this treatment.

In late October and early November 2004, Plaintiff began to experience symptoms including constipation, dizziness, and blood in his urine.  Plaintiff was seen at sick-call and given a stool softener.  On the morning of November 20, 2004, Plaintiff collapsed in his cell in a pool of blood.  Plaintiff was transported by ambulance to Leesburg Regional Medical Center.  Plaintiff was placed in intensive care and

2

diagnosed with renal failure and hemorrhaging; he was treated with dialysis and other measures.  Plaintiff was discharged and returned to Coleman on December 14, 2004.  Plaintiff's discharge summaries included a diagnosis of "chronic renal failure secondary to obstructive uropathy, urinary obstruction, obstructive uropathy, and urinary retention," and recommended monitoring of his non-functioning right kidney and follow-up with a urologist for prostate removal.

After returning to Coleman, Plaintiff was confined to a wheelchair and remained catheterized.  In February 2005, Dr. Tidwell began treating Plaintiff with epoetin and an iron supplement for anemia.  In late February 2005, Plaintiff returned to the Urology Center for laser prostate surgery.  Following his return to Coleman, Dr. Tidwell continued treating Plaintiff with epoetin and also began treating him with heparin to prevent blood clotting in Plaintiff's legs.

In September 2005, Plaintiff saw Dr. Tidwell and complained of intense pain in his left leg.  According to Plaintiff, Dr. Tidwell diagnosed an infection and prescribed an antibiotic.   Shortly thereafter, another physician at Coleman, Dr. Green, diagnosed Plaintiff as having blood clotting in his legs.  Dr. Green discontinued the epoetin and iron pills and increased Plaintiff's heparin dosage.  Plaintiff alleges that for the next four weeks he was in great pain, confined to a wheelchair, and had deteriorating kidney function.  Although his condition improved during the fifth week, his legs remained swollen and he could not walk.  Dr. Green advised that the condition was due to blood vessel damage in Plaintiff's legs.

Subsequently, Dr. Tidwell resumed treating Plaintiff with coumadin.   When Plaintiff's legs did not improve, Dr. Tidwell prescribed a diuretic for Plaintiff.  Plaintiff

alleges that special support stockings and a compression machine were ordered but never provided to him.  Plaintiff alleges that in November 2005 Dr. Tidwell told him that he might never be able to walk properly.  By the end of 2005, Plaintiff was experiencing recurring infections in his legs, which were not treated from December 2005 to March 2006.  At that time, a new Physician's Assistant (PA) arrived at Coleman and Plaintiff began receiving daily treatment for the infection.

## II. **Plaintiff's Legal Claims**

The Complaint names as Defendants the BOP, Tracy Johns (in his official capacity as Warden of FCC Coleman - USP), and Dr. Tidwell (in his official capacity as Medical Director for FCC Coleman - USP).

Plaintiff contends that Defendants were deliberately indifferent to his medical needs in violation of his rights under the Eighth Amendment by withholding medical treatment.  Plaintiff also alleges negligence on the part of Warden Johns and Dr. Tidwell in connection with Plaintiff's medical care, in particular that Defendants negligently delayed or failed to use proper blood testing and failed to provide the recommended medical treatment for Plaintiff's prostate condition.  Plaintiff alleges that the Coleman "medical staff" negligently prescribed epoetin for Plaintiff, which led to the "massive" blood clotting in Plaintiff's legs.  Plaintiff alleges that Defendants' negligent failure to provide timely treatment for the blood clots amounts to deliberate indifference in violation of the Eighth Amendment.  For relief, Plaintiff requests an injunction requiring Defendants to provide proper and adequate medical treatment, compensatory damages, and fees and costs.  Doc. 1 at 10-12.

The docket reflects that Defendant BOP was served with a summons and

4

complaint through the U.S. Attorney, and that Plaintiff also sought to serve Defendants Johns and Tidwell through the U.S. Attorney.  See Doc. 4.  Additionally, it appears that Warden Johns was served individually with the summons and complaint.  See Doc. 11. The record does not reflect that Dr. Tidwell has been served individually with process in this case.

### III. Defendants' Motion to Dismiss

The instant Motion to Dismiss or for Summary Judgment  (Doc. 7) argues that the Complaint should be dismissed because: (1) Plaintiff has failed to perfect service on the named individual Defendants; (2) the Complaint fails to state a claim upon which relief may be granted; (3) Plaintiff failed to exhaust his administrative remedies before filing suit; (4) neither the named Defendants in their official capacities nor the United States can be held liable for the alleged Constitutional violations; and (5) Plaintiff's FTCA claims are barred by the statute of limitations.

### IV. FTCA Jurisdictional Prerequisites

The FTCA  provides a limited waiver of sovereign immunity for actions against the United States involving, inter alia,  "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."   Tisdale v. United States, 62 F.3d 1367, 1370-71 (11th Cir. 1995) (internal quotations omitted).  Statutory waivers of sovereign immunity must be construed strictly in favor of the sovereign.   Means v. United States, 176 F.3d 1376, 1378 (11th Cir. 1999) (quotation and citation omitted).  "The United States, as

sovereign, is immune from suits save as it consents to be sued . . . and the terms of its

consent to be sued in any court define that court's jurisdiction to entertain the suit."

United States v. Mitchell, 445 U.S. 535, 538 (1980) (internal quotations and citation

omitted). Because the United States' consent to suit is limited by the terms of the

FTCA, "[w]here no such consent exists, a district court has no jurisdiction to entertain a

suit against the United States." Stanley v. Central Intelligence Agency, 639 F.2d 1146,

1156 (5th Cir. 1981).

Section 2675(a) states:

> "[a]n action shall not be instituted . . . against the United
> States for money damages for injury . . . caused by the
> negligent or wrongful act or omission of any employee . .
> . while acting within the scope of . . . employment,
> unless the claimant shall have first presented the claim
> to the appropriate Federal agency and his claim shall
> have been finally denied by the agency in writing . . .
> The failure of an agency to make final disposition of a
> claim within six months after it is filed shall . . . be
> deemed a final denial of the claim for purposes of this
> section."

"Section 2675(a) is satisfied if the claimant (1) gave the appropriate agency

written notice of the tort claim to enable the agency to investigate; and (2) stated

a sum certain as to the value of the claim." Orlando Helicopter Airways v. United

States, 75 F.3d 622, 625 (11th Cir. 1996) (citing Free v. United States, 885 F.2d 840,

842 (11th Cir. 1989)). The disposition of a tort claim by a federal agency is a

jurisdictional prerequisite to initiating suit in the district court. 28 U.S.C. § 2675;

Molinar v. United States, 515 F.2d 246, 249 (5th Cir. 1975) ("Adherence to the

statutory procedure for making a claim against the sovereign is a jurisdictional

prerequisite to the benefit of the sovereign's waiver of its immunity.").

Accordingly, with respect to Plaintiff's FTCA claims, the United States' motion to dismiss for failure to exhaust is properly construed as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  When such a motion is based on matters outside the complaint, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981) (internal quotation and citations omitted); see also Barnett v. Okeechobee Hospital, 283 F.3d 1232, 1237-38 (11th Cir. 2002). [3]

28 U.S.C. § 2762 and regulations promulgated thereunder provide for the administrative adjustment of claims, including the requirement that the claimant state his claim for money damages in a sum certain.  In the prison context, the procedures for filing an administrative tort claim are set forth in the BOP's regulations at 28 C.F.R. § 543.30 and in the BOP's Program Statement 1320.06.   The regulation provides, *inter alia*, that "a claim for money damages for personal injury or death and/or damage to or loss of property must be filed against the United States by the injured party with the appropriate federal agency for administrative action."   The BOP regulation refers potential prisoner-claimants to the specific procedures governing review of

---

[3]Plaintiff attached the pertinent administrative remedy documents as an Exhibit to the Complaint.  See Doc. 1-2.  "[W]here the Plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents as part of the pleadings" and it is unnecessary to treat the Defendants' Motion to Dismiss as a summary judgment motion.  See Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F3d 1364, 1369 (11th Cir. 1997).

administrative claims under the FTCA set forth at 28 C.F.R. Part 14.  Pursuant to that regulation, "a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for . . . personal injury[.]" 28 C.F.R. § 14.2(a) (emphasis added).   "[T]he filing of a 'sum certain' facilitates administrative disposition of the claim, since it both allows the agency better to evaluate whether the settlement will require the approval of the Attorney General under [§ 2762 ] and provides the agency with the information necessary to act upon it within six months under [§ 2765(a) ]."  Molinar, 515 F.2d at 249.  The requirement of a sum certain also serves to discourage those with potential claims from withholding information from the agency in the hopes that a subsequent lawsuit might enhance the value of a claim.  See id.

In this case, the administrative remedy documents attached to the Complaint reflect that Plaintiff pursued claims pertaining to his medical care through the BOP's administrative remedy process, but did not file an administrative tort claim seeking money damages in a "sum certain" against the United States.  See Exhibits to Complaint (Doc. 1-2).  In the BOP's responses to his administrative remedy requests, Plaintiff was clearly advised that "[r]egarding your request for monetary compensation, the Administrative Remedy Program is not the appropriate forum to request compensation.  An administrative claim for monetary compensation may be filed as set forth in Program Statement 1320.06, Federal Tort Claims Act."  Doc. 1-2 at 6 (Regional Response).   In the response denying Plaintiff's Central Office appeal, Plaintiff was clearly advised that "[w]ith regard to your request for compensation for 'pain and

suffering,' the administrative remedy process is not the proper medium in which to seek monetary compensation.  You may file a claim under the Federal Tort Claims Act." Doc. 1-2 at 9 (Central Office response).

The record is thus clear that Plaintiff never availed himself of the specific and necessary procedures for pursuing an administrative tort claim for monetary damages stemming from his medical care while incarcerated.  Plaintiff's argument that his prison administrative remedy requests and appeals satisfy the administrative tort claim requirements under the FTCA is without merit.  Plaintiff's administrative remedy requests do not state that he is filing a claim pursuant to the FTCA, and Plaintiff never set forth the requisite sum certain of his damages claim.  Plaintiff's failure to satisfy the FTCA's statutory prerequisite of first filing an administrative claim for a sum certain before filing suit deprives this Court of subject matter jurisdiction over Plaintiff's FTCA claims, and accordingly such claims must be dismissed.  <u>Dalrymple v. United States</u>, 460 F.3rd 1318, 1325-26 (11th Cir. 2006).[4]

## V.  <u>Constitutional Claims</u>

### A.  <u>Exhaustion of Remedies</u>

Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  "Congress now has mandated exhaustion

---

[4] Because Plaintiff's FTCA claim must be dismissed for lack of subject matter jurisdiction because Plaintiff did not satisfy the statutory prerequisites, it is unnecessary to address Defendants' further argument that such claim is time-barred.

in section 1997e(a) and there is no longer discretion to waive the exhaustion requirement." Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998); see also Booth v. Churner, 532 U.S. 731, 741 (2001) (finding that Congress has mandated exhaustion of administrative remedies, regardless of the relief offered through the administrative procedures).  In determining whether a plaintiff has exhausted his administrative remedies, a court does "not review the effectiveness of those remedies, but rather whether remedies were available and exhausted." Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999) (citing Alexander, 159 F.3d at 1326).

In Alexander, the Eleventh Circuit noted seven important policies favoring an exhaustion of remedies requirement:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

159 F.3d at 1327 (citation omitted).

Defendants concede that Plaintiff exhausted the administrative remedy process with regard to his deliberate-indifference claim stemming from his prostate enlargement and loss of kidney function.  Doc. 7 at 5.  Defendants argue, however, that Plaintiff has failed to administratively exhaust all of the claims in the Complaint because Plaintiff has pursued no further administrative remedies since the denial of his Central Office appeal

10

in November 2005.  See id.  Defendants state that "no claim as to any particularized current or future issue regarding his medical care has been exhausted and this matter should be dismissed as to claims sought to address such matters."  Id.

A review of Plaintiff's administrative remedy documents reflects that Plaintiff complained of delayed and inadequate care regarding his enlarged prostate and subsequent kidney problems amounting to "deliberate indifference" by Coleman medical staff, and that Plaintiff sought "remuneration for pain and suffering . . . timely and adequate medical care in future . . . recommendation for compassionate release . . . and injunction against retaliatory actions."  The Court finds that Plaintiff's administrative remedy requests were thus sufficient to put the Defendants on notice as to the nature of Plaintiff's claims asserted in this case and to satisfy the policy concerns outlined in Alexander.

## B.  Eighth Amendment Claims

Dismissals for failure to state a claim are governed by Fed. R. Civ. P. 12(b)(6). The allegations of the complaint are taken as true and are construed in the light most favorable to the Plaintiff.  See Thaeter v. Palm Beach County Sheriff's Office, 449 F.3d 1342, 1352 (11th Cir.2006); Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir.1997).  The complaint may be dismissed if Plaintiff has not stated enough facts to state a claim for relief that is plausible on its face.  Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1973 n.14, 1974 (2007).

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments."  "Prison personnel may not subject inmates to acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical

11

needs . . . . [S]uch deliberate indifference by a correctional system to the serious medical needs of its prisoners constitutes the kind of unnecessary and wanton infliction of pain that is proscribed by the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1504-1505 (11th Cir. 1991) (citations omitted).   In Estelle v. Gamble, 429 U.S. 97, 105-06 (1976), the Supreme Court explained that:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.

In this case, Plaintiff alleges both medical negligence and deliberate indifference by Defendants.  To the extent that Plaintiff alleges that he received medically negligent care, he has failed to state an Eighth Amendment claim and such negligence claims must be dismissed pursuant to Estelle.

To show that a prison official acted with deliberate indifference to an inmate's serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry.  Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).  First, a plaintiff must establish that he had an objectively serious medical need.  Id.  Second, a plaintiff must show that the prison official acted with an attitude of deliberate indifference to that serious medical need.  Id.  A prison official cannot be found deliberately indifferent in violation of the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety.  Id. at 1245 (citing Farmer v. Brennan, 511

U.S. 825, 835 (1994)).  The Eleventh Circuit has explained that deliberate indifference

has three components: "'(1) subjective knowledge of a risk of serious harm; (2)

disregard of that risk; (3) by conduct that is more than mere negligence.'"  Id. (quoting

McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).  A delay in the treatment of a

serious medical need may amount to deliberate indifference depending upon the

reason for the delay.  Id. at 1246.

Defendants do not dispute that Plaintiff's medical needs were "serious."

Although Plaintiff's deliberate-indifference allegations are somewhat confusing because

they are interwoven with his negligence claims, the Court cannot at this juncture say

that Plaintiff has failed to allege sufficient facts to state a deliberate-indifference claim

that is plausible on its face.  Plaintiff alleges that Defendant Dr. Tidwell was aware of

the recommendation for prostate reduction, and that Dr. Tidwell delayed inordinately in

providing the necessary treatment, leading to further medical complications as alleged

by Plaintiff.   Further, although the Complaint alleges that Dr. Tidwell is also sued in his

"official capacity" as the Medical Director of the USP, Plaintiff's factual allegations

seem to state only claims against Dr. Tidwell in his individual capacity as Plaintiff's

treating physician.  The Court concludes that Plaintiff should be given an opportunity to

amend his Complaint to eliminate the negligence claims that have been dismissed

herein, and to clarify his deliberate-indifference claims with respect to Dr. Tidwell.

Inasmuch as the parties agree that Plaintiff is no longer under Dr. Tidwell's care, see

Doc. 7 and Doc. 12, to the extent that Plaintiff seeks injunctive relief against Dr. Tidwell

in the instant Complaint, such claims are moot.

The Defendants point out that Dr. Tidwell has not been served with process in

this case and seek dismissal on that basis as well.  Doc. 7.  Pursuant to Fed. R. Civ. P. 4(i), service upon an employee of the United States sued in an individual capacity is effected by serving the United States pursuant to Rule 4(i)(1), and by serving the employee as prescribed by 4(e), (f), or (g).  Further, if service is not made within 120 days after the filing of the complaint, the court "shall dismiss the action without prejudice as to that defendant  *or* direct that service be effected within a specified time[.]"  Fed. R. Civ. P. 4(m) (emphasis added).  In accordance with that Rule, the Court will direct that Plaintiff effect proper service of the Amended Complaint on Dr. Tidwell within the time period set out below.

With respect to Plaintiff's claims against the Bureau of Prisons and Warden Johns, the Court concludes that the allegations of the Complaint are insufficient to state a plausible constitutional claim against such Defendants.  First, the BOP as an agency of the United States is cloaked with sovereign immunity as explained above. Second, as to Warden Johns, "[i]t is well established in this circuit that supervisory officials are not liable under [Bivens] for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  Dalrymple v. Reno, 334 F.3rd 991, 995 (11th Cir. 2003) (internal quotations and citations omitted).  Accordingly, Warden Johns cannot be liable to Plaintiff solely by virtue of his official capacity as Warden of the prison.  Further, "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous . . . [such liability] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation."  Id. (internal quotations and

14

citations omitted).   Plaintiff in this case has alleged no facts showing that Warden

Johns personally participated in the alleged Eighth Amendment violations or that there

is a causal connection between any action of Warden Johns and the alleged Eighth

Amendment violations.  Any participation by Warden Johns' in denying Plaintiff's

administrative remedy requests is insufficient to trigger liability as there is no causal

connection between such participation and the alleged constitutional violations giving

rise to the administrative remedy requests.  See id.

## VI.  Conclusion

For the reasons set forth in this Order, the Defendants' Motion to Dismiss (Doc.

7) is **GRANTED** except with respect to Plaintiff's deliberate-indifference claims

asserted against Dr. Tidwell.  It is hereby **ORDERED** that Plaintiff shall, **WITHIN**

**THIRTY (30) DAYS**, file an Amended Complaint in accordance with this Order.  Plaintiff

shall **WITHIN SIXTY (60) DAYS** effect proper service of the Complaint upon

Defendant, failing which this case will be dismissed.

**DONE AND ORDERED** at Ocala, Florida, this 14th day of September 2007.


GARY R. JONES
United States Magistrate Judge


c:     Counsel of Record

15